## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT MARTINEZ,<br>(TDCJ-CID #1500139) | §<br>§<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. H-13-3729 |
| WILLIAM STEPHENS, | §<br>§<br>§ | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, Robert Martinez, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging

a conviction in the 174th Judicial District Court of Harris County, Texas. Respondent filed a motion

for summary judgment, (Docket Entry No. 10), and copies of the state court record. Martinez has

filed his response. (Docket Entry No. 14). After consideration of the motion and response, the

record, and applicable authorities, the court grants respondent's motion. The reasons for this ruling

are stated below.

## I.    Background

A jury found Martinez guilty of the felony offense of aggravated robbery with a deadly

weapon. (Cause Number 1119772). Martinez pleaded true to the enhancement paragraph relating

to a prior conviction in Cause Number 970377. On April 16, 2008, the jury sentenced Martinez to

twenty years imprisonment. The Fourteenth Court of Appeals of Texas affirmed Martinez's

conviction on November 10, 2009. The Texas Court of Criminal Appeals refused Martinez's

petition for discretionary review on October 13, 2010. Martinez filed an application for state habeas

corpus relief on August 17, 2011, which the Texas Court of Criminal Appeals denied without written order on October 30, 2013. (Docket Entry No. 8-29, *Ex parte Martinez,* Application No. 77,479-03 at cover, p. 2).

On December 19, 2013, this court received Martinez's federal petition. Martinez contends that his conviction is void because trial counsel, George O. Jacobs, rendered ineffective assistance by failing to:

(1)     investigate his case and hire an investigator;

(2)     contact the only eyewitness who had favorable testimony; and

(3)     interview witnesses prior to trial.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-11).

## II.     The Applicable Legal Standards

This court reviews Martinez's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits. An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).  A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of

the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the

extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that

findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that,

in a summary judgment proceeding, all disputed facts must be construed in the light most favorable

to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear

and convincing evidence" as to the state court's findings of fact, those findings must be accepted as

correct.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Martinez is proceeding *pro se*.  A *pro se* habeas petition is construed liberally and not held

to the same stringent and rigorous standards as pleadings filed by lawyers.  *See Martin v. Maxey,* 98

F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall

v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Martinez's state

and federal habeas petitions.  *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.   Statement of Facts

The appellate court summarized the evidence at trial as follows:

> I. Complainant's Story
> On April 24, 2007, the complainant was performing community
> service at a community center for children and the elderly. The
> complainant was working at the center because of a traffic ticket he
> received. At approximately two in the afternoon, when the
> complainant was leaving for the day, an elderly female asked him for
> a ride home. The complainant agreed and the female directed him to
> her home because he was unfamiliar with that part of town. The
> complainant dropped the female off and began his trip home. When
> he stopped at a stop sign to exit her neighborhood, he was approached
> by appellant who asked the complainant if he could give appellant a
> ride to the Metro station down the street. The complainant agreed and
> appellant got into the complainant's vehicle. Once they reached the
> Metro station, appellant asked the complainant if he could instead
> give him a ride to appellant's friend's house down the street. The
> complainant drove appellant to a house that appellant claimed was his
> friend's house. When they were stopped outside the house, appellant

pulled out a gun and stuck it in the complainant's side and said "give me all you have." The complainant testified the gun was a black revolver with a brown grip. The complainant gave appellant all the cash he had in his wallet-thirty-five dollars. Appellant then snatched the complainant's wallet out of his hand. Next, appellant got out of the vehicle, continuing to point the gun at the complainant and demanded the complainant get into the passenger seat while appellant got into the driver's seat. Appellant drove complainant's vehicle to a nearby gas station. Once they reached the gas station appellant demanded they get out of the vehicle and go to the ATM machine inside the gas station. Appellant held a gun to the complainant's side as they walked to the ATM machine in the gas station. The complainant testified there were two clerks and one customer inside the store when they entered. Eventually, the complainant withdrew eighty dollars from one of his accounts. After withdrawing the money, the complainant demanded his keys back from appellant in exchange for the eighty dollars. The complainant testified he was yelling and trying to get the clerk's attention. Appellant and the complainant then went to the front of the store and appellant asked the complainant if he would like anything to drink. The complainant said he would like a Sprite; appellant went to retrieve the Sprite. While appellant was getting the Sprite, the complainant tried to signal to the clerk that he needed the clerk to call 9-1-1. The clerk did not make the call. Appellant returned and purchased the Sprite with the complainant's money. Next, appellant tried to get the complainant to leave the store with him, but the complainant refused. Eventually, appellant left the store alone in the complainant's vehicle. The complainant called the police on his cellular phone and they arrived at the gas station shortly thereafter. The police attempted to take the complainant back to the house where the complainant picked up appellant, but the complainant testified the police were not following his directions and were unable to locate the house. The complainant was dropped off back at the gas station where a family member picked him up. Police officers testified they never recovered a surveillance video from the gas station.

II. Appellant's Story

On April 24, 2007, appellant testified he left his house early in the morning to go to work. When he left his house, he was carrying approximately six hundred dollars in cash for his rent and other bills. He finished work around noon and went to his mother's house. Many of his family members were at his mother's house. Everyone was outside in the front yard, talking and working on a vehicle.

Eventually, a red vehicle began circling the house. After the vehicle had circled the house three or four times, appellant flagged the vehicle down to determine what it was doing. Complainant was driving the vehicle and apparently asked appellant whether appellant could procure drugs for him. Appellant said he knew where to find drugs and that he would help the complainant. Appellant got in the passenger seat of the complainant's vehicle and they drove to the gas station. Appellant testified they went to the gas station because it was near the apartment complex where appellant could buy drugs and he wanted to drop the complainant off. He explained he did not want the complainant coming with him to buy the drugs. Appellant testified the complainant voluntarily agreed that appellant would take the complainant's vehicle to the apartment complex to buy drugs. Appellant testified they never entered the gas station nor went to an ATM machine. Appellant drove to the apartment complex where he believed he could buy drugs for the complainant. When he arrived at the apartment complex, he ran into a girl who led him to an apartment. When he got inside the apartment, he sat on a couch and waited for her to come back with the drugs. She never returned and the next thing he knew he was being jumped and robbed by three or four individuals. Appellant lost consciousness and suffered serious injuries requiring reconstructive surgery. When appellant regained consciousness, he called his mother and then saw police standing outside of the apartment. He spoke with the police and relayed to them what happened. An ambulance was called and it transported appellant to the hospital. Appellant denied ever carrying a gun or threatening the complainant.

III. Police Testimony

Officer T. Dougherty of the Houston Police Department testified that on April 24, 2007, he received a dispatch about a possible prowler at an apartment complex in his patrol area. When he arrived at the apartment complex, he observed appellant walking down from an apartment covered in blood. The reportee identified appellant as the prowler. Appellant told Officer Dougherty that he had just been beat up in the apartment upstairs. Officer Dougherty was not aware of the robbery recently reported by the complainant at the time he spoke with appellant. After the ambulance left with appellant, Officer Dougherty searched the apartment for appellant's attackers. Officer Dougherty did not find anyone in the apartment nor any weapons. Officer James Rachel of the Houston Police Department testified he conducts follow-up investigations on reported incidents and that he was assigned to the robbery incident reported by complainant. Officer

Rachel visited the gas station where the complainant was allegedly robbed and then visited the apartment complex where the complainant's vehicle was recovered. Officer Rachel previously received a supplemental incident report informing him that the stolen vehicle had been recovered at an apartment complex. At this time Officer Rachel was unaware of the assault incident involving appellant that had taken place at the same apartment complex. After speaking with the apartment manager regarding the vehicle found at the complex, he was informed about the assault incident involving appellant. Officer Rachel obtained a copy of the incident report involving appellant and subsequently developed appellant as a possible suspect in the complainant's robbery incident. Officer Rachel told the jury that he compiled a photospread using a jail booking photo of appellant. Another police officer showed the photospread to the complainant and the complainant immediately identified appellant as the person who robbed him.

*Martinez v. State,* No. 14-08-00345-CR, 2009 WL 3734154, slip op. at **1-2 (Tex. App. -- Houston [14th Dist.] 2009, pet. ref'd)(not designated for publication).

## IV.    The Claim of Ineffective Assistance of Trial Counsel

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668 (1984). Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson,* 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones,* 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should

not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that the affidavit of Jacobs was credible and that:

> 75. The applicant fails to prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness, thus fails the first prong of *Strickland. Mitchell v.*

*State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Narvaiz,* 840 S.W.2d at 434 (citing *Strickland,* 466 U.S. at 688).

76. Even assuming, *arguendo,* that counsel's representation was so deficient that it fell below an objective standard of reasonableness, the applicant still fails to prove that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Mercado,* 615 S.W.2d at 228. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Such probability or likelihood must have been substantial, not just conceivable. *See Harrington v. Richter,* 131 S. Ct. 770, 794-95 (2011) (citing *Strickland,* 466 U.S. at 693).

77. The applicant fails to prove that, but for counsel's conduct, the applicant would have been found not guilty, or would have received a lesser sentence.

78. The applicant does not demonstrate a substantial likelihood of a different result, thus fails to meet the second prong of *Strickland.*

79.     The totality of the representation afforded the applicant was sufficient to protect the applicant's right to reasonably effective assistance of trial counsel.

80.     Jacobs' representation of the applicant was effective.

(Docket Entry No. 8-29, pp. 96-97).

Under AEDPA, this court must give proper deference to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell,* 311 F.3d 349, 351 (5th Cir. 2002). Because the state court properly identified *Strickland* as the governing legal principle, the "unreasonable application" prong of section 2254(d)(1) provides the standard that governs this court's review of the state court's decision on Martinez's ineffective counsel claims. *Bell v. Cone,* 535 U.S. 685, 694-695 (2002). This court must determine whether the state court's application of *Strickland* was objectively unreasonable. *Id.; Neal v. Puckett,* 286 F.3d 230, 236 (5th Cir. 2002)

(en banc), *cert. denied*, 537 U.S. 1104 (2003).  Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236).  "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

### A.    Failure to Investigate

Martinez argues that counsel's unfamiliarity with the law deprived him of a private investigator.  Martinez asserts that counsel should have moved the trial court to grant him funds for a private investigator.  Martinez complains that counsel's failure to hire a private investigator resulted in the loss of valued Constitutional rights.  Martinez states that he had only two sources of direct evidence to corroborate his innocence.  The first source was the surveillance video tape from the store's security system.  The second source was the store clerk's eyewitness testimony. Martinez asserts that counsel's failure to hire an investigator compounded the errors in failing to obtain the sources of favorable evidence.  Martinez claims that had counsel hired an investigator and presented the exculpatory evidence, the outcome of trial would have been different.

In his affidavit to the state habeas court, counsel testified:

> Although I asked the Court to grant funds a private investigator in the case, because I was hired and not appointed the Court at that time felt like he did not have to grant me funds for a private investigator, although I now believe the law has changed in  that area or he was simply incorrect in doing so at that time. At any rate I did the investigation myself and did a thorough and extensive job of it including a background check on the complaining witness who had

no prior convictions. Everything possible to defend the Defendant under the circumstances with his prior record with the lack of any other witnesses to the offense other than the complaining witness and there was a total lack of exculpatory evidence on behalf of any of the Defendant's witnesses. Everything reasonable and prudent was done on the Defendant-Applicant's behalf.

(Docket Entry No. 8-29, pp. 73-74).

The state habeas court found the facts stated in trial counsel's affidavit to be true and found that:

> 10.   Jacobs conducted a thorough investigation of the primary case.
>
> 11. Jacobs' investigative efforts included reviewing the State's file, reviewing the police offense reports, reviewing the witness statements, speaking with the applicant in detail about the primary case, speaking with witnesses both for the State and for defense, conducting background checks on witnesses, visiting the crime scene, and attempting to secure any video surveillance footage from the store.
>
> 12. Through Jacobs' thorough investigation, he learned that although the store staff looked for its surveillance footage recorded at the time of the crime, it could not be located and Jacobs was informed that it had been erased.
>
> 13. Jacobs attempted to locate possible witnesses who may have been present at the scene, but did not have any leads after speaking with the manager of the store and other possible witnesses.
>
> 14. Jacobs reviewed the offense with the applicant in detail on more than one occasion.
>
> 15. Jacobs discussed with the applicant about his investigative findings and any possible strategies on multiple occasions.

(Docket Entry No. 8-29, pp. 87-88).

The state habeas court concluded:

63. To prevail on a claim of ineffective assistance of counsel due to failure to investigate, the applicant must show what a more in-depth investigation would have shown. *Mooney v. State,* 817 S.W.2d 693 (Tex. Crim. App. 1991). The applicant is required to show that there were actual witnesses who should have been called or that there was actual evidence in existence that should have been discovered and presented. *Id.* It is not enough for an applicant to speculate and claim that there was potential evidence that could have been discovered. *Id.* The applicant fails to make the necessary showing to prove that counsel failed to investigate.

64. Even assuming, *arguendo,* that defense counsel limited his investigation, an attorney's decision to limit his investigation may be reasonable under the circumstances. *Harris v. Dugger,* 874 F.2d 756, 763 (11th Cir.), *cert. denied,* 110 S. Ct. 573 (1989); *Butler v. State,* 716 S.W.2d 48, 54 (Tex. Crim. App. 1986).

65. The applicant is tasked with the burden of showing that potential defenses were precluded or that certain investigative actions would have made a difference to the applicant's case and he has not done so. *Wilkerson v. State,* 726 S.W.2d 542 (Tex. Crim. App. 1986).

66. Just because the applicant believes - with the benefit of hindsight - that trial counsel could have done a better job, does not equate to counsel providing deficient representation. *See Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

67. Here, the applicant has not overcome the presumption that trial counsel conducted a proper investigation. *Strickland,* 466 U.S. at 691.

(Docket Entry No. 8-29, p. 94).

"When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Id.; see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial

court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In this case, the Texas Court of Criminal Appeals denied without written order Martinez's state habeas application raising this claim. Because the state habeas court issued the last reasoned opinion on this matter, this court "looks through" the Texas Court of Criminal Appeals' order to the state habeas court's decision.   The Texas Court of Criminal Appeals' response to his state application stating, "Denied Without Written Order," implies the state's highest court rejected Martinez's claims on the merits. *See Henderson v. Cockrell,* 333 F .3d 592, 598 (5th Cir. 2003). Further, the state trial court entered detailed findings of fact and conclusions of law refuting Martinez's allegations of ineffective assistance in response to his state application.  Under the "look through" doctrine, this court may look through the denial of the Court of Criminal Appeals to the state trial court's findings on these matters. *Jackson v. Johnson,* 194 F.3d 641, 651 (5th Cir. 1999).

The state habeas court found the facts stated in trial counsel's affidavit to be true and concluded that Martinez had received reasonably effective assistance of counsel. (Docket Entry No. 8-29, pp. 96-97).  The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding.  These credibility determinations are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).  Martinez has not produced clear and convincing evidence to rebut this finding.

To establish his failure to investigate claim, Martinez must allege with specificity what a proper investigation would have revealed and how it would have benefitted him. *United States v.*

*Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green,* 882 F.2d 999, 1003 (5th

Cir. 1989)).  Martinez only claims that counsel should have hired a private investigator who could

have produced the surveillance video tape from the store.   Martinez further claims that an

investigator would have been able to locate the store clerk who told Officer Ferguson that he did not

witness a crime.  The record shows that counsel cross-examined Officer Ferguson about his offense

report.  In that report, Officer Ferguson noted that the clerk saw the complainant and Martinez, but

he did not see any offense take place.  Officer Ferguson also testified that he did not notate the name

of the clerk or the name of the store manager in his offense report.

Martinez must also show a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceedings would have been different.  Martinez does not explain how this

additional investigation would have changed the outcome of the trial.

The state court's decision was not contrary to clearly established federal law.  Martinez is not

entitled to habeas relief.  28 U.S.C. § 2254(d)(1).

**B.      The Failure to Call Witnesses**

In his second claim of ineffective assistance, Martinez argues that counsel failed to call the

store clerk.  The complainant alleged that he was robbed inside the store and in front of the store

clerk behind the counter.  The complainant told the clerk "he was being robbed."  Officer Ferguson

recorded the statement of the store clerk, who stated that he did not see a crime take place.  Martinez

claims that the store clerk's testimony would have tipped the scales in favor of Martinez's innocence

and that it's highly probable the outcome of the trial would have been different.  Counsel admitted

in closing argument that he failed to seek the store clerk.  Martinez complains that counsel offered

no reason as to why he was unable to locate the store clerk.

In his affidavit submitted during the state habeas proceedings, counsel testified as follows:

> My name is George O. Jacobs. I am a licensed attorney in the State of Texas and I am of sound mind and perfectly able to give this affidavit. I was the trial counsel for Robert Martinez in *The State of Texas v. Robert Martinez* in the 174th District Court of Harris County, Texas, in which he was charged with a felony offense. I met Mr. Martinez when I was visiting another client of mine in the holdover cell of the 174th District Court of Harris County, Texas. Mr. Martinez made a plea to me to represent him and further agreed and signed a contract to pay me an adequate amount for a felony trial in District Court. Despite his promises Mr. Martinez was never able to come up with anything but a small down payment on the case and never paid anywhere near what a felony trial is in the State of Texas. In spite of this fact I continued to work and represent Mr. Martinez and I continued to put my best efforts forward in his behalf, I thoroughly investigated the case, I talked to witnesses, read the offense reports, reviewed the State's file in its entirety and did everything possible to represent Mr. Martinez above and beyond that which is normally given to such a defendant. As part of my investigation and preparation I did review the State's file in its entirety which was made available to me. This included the offense reports and any witness statements in the file. I further in investigating the case went to the location of the store where it was claimed that the Defendant had sent the complaining witness in under threat of a gun to collect monies for him and talked to the manager there and any other possible witnesses there. I also tried to obtain from the store any video tapes that they may have had of the Defendant coming into the store with the complaining witness and was told the store, although they looked for it, never could find it and assumed that by the time that I had gotten into the case, the video had been erased. I thoroughly reviewed the offense with the Applicant-Defendant. I went over his summary of the facts, discussed them at length and tried to verify them in the instances where it was possible to verify them. My investigation finally came down to the conclusion that it was just a swearing match between the complaining witness and the Defendant as to what actually happened and the jury chose to believe the complaining witness in the case.

(Docket Entry No. 8-29, p. 72).

Second-guessing is not the test for ineffective assistance of counsel. *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989). In *Strickland*, 466 U.S. at 691, the Supreme Court explained that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Id.* at 691.

The state habeas court found the facts stated in trial counsel's affidavit to be true and concluded that Martinez had received reasonably effective assistance of counsel. The Court of Criminal Appeals based its denial of habeas relief on this finding. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g). Martinez has not produced clear and convincing evidence to rebut this finding.

Decisions on the presentation of evidence and witnesses are essentially strategic. Counsel is entitled to a presumption that his performance was adequate. Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy. *Wilkerson v. Cain*, 233 F.3d 886, 892-93 (5th Cir. 2000)(citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)). There is no basis other than speculation to support Martinez's argument that the outcome of the trial would have been different had counsel offered the additional evidence, which consisted of the store clerk's testimony. At trial, the complainant testified that Martinez held a gun to him as they entered the store. The complainant testified that Martinez stood directly behind the complainant while they were in the store, and Martinez pressed the gun against complainant's

body. The complainant further testified that he tried unsuccessfully to signal to the clerk to call 911, but the clerk did not see him. Even if counsel had called the clerk as a defense witness, Martinez does not explain how the outcome of trial would have been different. The clerk's testimony that he did not witness an offense would have been consistent with the complainant's testimony that the clerk never saw the complainant signaling for help.

The state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law. Martinez has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

C.    **The Failure to Interview Witnesses**

Martinez complains that counsel failed to interview defense witness Marcella Dominguez prior to trial. As a result, Martinez complains that counsel elicited damaging testimony that had a prejudicial impact on the minds of the jury. Martinez asserts that Dominguez's testimony proved to be harmful to Martinez's credibility. Martinez notes that the State emphasized in its closing argument that Dominguez was "confused" and portrayed Martinez and his other two witnesses as "a bunch of liars." Martinez complains that counsel put a witness on the stand without knowing the nature of her testimony, and her testimony only damaged Martinez's credibility.

In his affidavit to the state habeas court, counsel testified:

> I did speak and interviewed the Defendant's witnesses Joanna,
> Martinez, Lily Martinez and Marcella Dominguez prior to the trial
> and once again these witnesses did not offer anything exculpatory but
> only offered some factual matters occurring between them and the
> Defendant in advance or prior to the actual offense. These witnesses
> had been together with the Defendant prior to the offense with the
> complaining witness and therefore could only answer questions about
> his whereabouts prior to the offense but not during the offense. As
> with all these witnesses I had to call them numerous times and pursue

them to come to Court to talk with me about the case. One of the witnesses, I am not exactly sure which one it was, but I believe it was Marcella Dominguez never would come to my office, never would talk to me on the telephone, I could not get in touch with her and finally on the day of trial she shows up shortly before she was to take the stand and testify and gave me very little time to speak to her prior to that time. None of these witnesses could offer anything exculpatory as to the Defendant's participation in the offense. All of their testimony revolved around his location and times several hours before the offense.

(Docket Entry No. 8-29, p. 73).

The state habeas court found:

19. Contrary to the applicant's claim, Jacobs spoke with and attempted to interview Joanna Martinez, Lily Martinez, and Marcella Dominguez (defense witnesses).

20. Jacobs attempted to interview the three (3) defense witnesses, and discovered that none of the defense witnesses were present during the offense, could not account for the applicant's whereabouts during the offense, and thus could not be alibi witnesses.

21. Through Jacobs' thorough investigation, he discovered that the defense witnesses were together with the applicant prior to the offense, but did not witness anything as the applicant had not been with them for several hours before the offense took place.

22. Jacobs had to contact each of the defense witnesses many times before they contacted Jacobs or talked with him about the case.

23. While Jacobs does not recall with complete certainty, he believes that one of the defense witnesses, Marcella Dominguez, never talked with him on the phone or came to his office to discuss the case. The first chance Jacobs had to speak with Ms. Dominguez was on the day of trial, when she appeared in court shortly before giving her testimony, and Jacobs had very limited time to speak with her.

(Docket Entry No. 8-29, pp. 88-89).

The state habeas court concluded:

70. The applicant fails to show that counsel failed to interview witnesses for the State or for the defense, and fails to meet his burden of showing that, not only were they available to testify, but how the testimony would have benefited the defense's case. *King,* 649 S.W.2d at 44; *Wilkerson v. State,* 726 S.W.2d 542, 551 (Tex. Crim. App. 1986).

71. In addition, the presentation of witnesses is essentially strategy and thus within the trial counsel's domain. *Strickland,* 466 U.S. at 689.

(Docket Entry No. 8-29, p. 95).

The Court of Criminal Appeals based its denial of habeas relief on this finding.  These credibility determinations are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).  Martinez has not produced clear and convincing evidence to rebut this finding.

To establish his ineffective assistance of counsel claim, Martinez must show that his counsel's performance was deficient and that he was actually prejudiced as a result.  *Strickland v. Washington,* 466 U.S. 668, 68 (1984).  This court's scrutiny of counsel's performance is highly deferential. *Strickland,* 466 U.S. at 689.  Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

Counsel testified that he made repeated efforts to contact various family members to testify on Martinez's behalf.  At trial, Joanna Martinez - Martinez's mother, Lily Martinez - Martinez's wife, and Marcella Dominguez - Martinez's maternal aunt testified.  Joanna Martinez testified that various members of her family were outside on the afternoon of the offense while her son-in-law repaired his car.  Joanna Martinez testified that she and her sister, Marcella Dominguez, and

Martinez were present when a small red car drove past their house several times. She testified that her son, Martinez, approached the car and exchanged words with the driver. Martinez then said he would be back shortly, and he got into the small red car. Joanna Martinez testified that she later received a call from Martinez during which Martinez told her that he was being assaulted at a nearby apartment complex. Joanna Martinez and her daughter drove to that location and found Martinez, who was being transported to the hospital via ambulance.

Lily Martinez testified that her husband, Robert Martinez, left their apartment on the morning of the offense with nearly $600.00 in his wallet. She testified that Martinez worked for his uncle, and that he was visiting his mother on the date of the offense. She testified that she did not see him until he returned from the hospital at 9:00 p.m. on the date of the offense. She saw him after he returned from the hospital.

Marcella Dominguez, Martinez's aunt, testified that she and Martinez had spent the night prior to the offense at a friend's house. She too testified that she was present when the red car drove past the home several times. She also saw Martinez speak to the driver and leave with the driver. On cross-examination, both Joanna Martinez and Marcella Dominguez admitted to having prior convictions. They also admitted that they did not search Martinez's pockets and did not know if he had a weapon when he got into the red car. In his closing argument, the prosecutor argued that the testimony of Joanna Martinez, Lily Martinez and Marcella Dominguez should be viewed with skepticism because they were trying to save Martinez from going to prison.

The prosecutor further argued that Martinez's own testimony was not credible. Martinez testified that he wanted to make some quick money to buy gas and Pampers, so that was why he wanted to help the complainant purchase some marijuana. Though Martinez had over $600.00 in

cash on his person, he decided to engage in a drug sale that would give him a profit of $40.00. On cross-examination, Martinez admitted that he had previously been convicted of possessing a controlled substance. Martinez testified that he never robbed the complainant, and that he only helped the complainant purchase marijuana. Martinez has not demonstrated how the outcome of trial would have been different had counsel interviewed Joanna Martinez, Lily Martinez, and Marcella Dominguez prior to trial. It was well within the jury's province to assess the credibility of the witnesses.

The state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law. Martinez has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## V.     Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 10), is GRANTED. Martinez's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). Where a district court has rejected a prisoner's

constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Martinez's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Martinez has not made the necessary showing for issuance. Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on _____March 11_____, 2015.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE